UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JONATHAN RABURN

VERSUS

WIENER, WEISS & MADISON, et al.

CIVIL ACTION

NO. 17-155-JWD-RLB

RULING AND ORDER

I. INTRODUCTION

This matter comes before the Court on the Motion for Summary Judgment filed by Defendant Community Management, LLC ("Community"). ("Motion," Doc. 55). Plaintiff Jonathan Raburn has filed an Opposition to the Motion, (Doc. 61), and Community has filed a Reply in further support of the Motion, (Doc. 68). The parties have also submitted supplemental briefs as discussed *infra*. (Docs. 72, 73).

After careful consideration of the law, facts, and arguments of the parties, for the reasons set forth below, the Motion is granted. Judgment shall be entered consistent with this Ruling and Order.[1]

II. FACTUAL BACKGROUND

In March 2016, Community entered into an Association Management Agreement ("Agreement") with the Colony Homeowner's Association, Inc. ("the Colony"), wherein the Colony retained Community to manage its homeowner's association. (*See* Doc. 55-2 at 1-2). According to the Agreement, Community was authorized to act on behalf of the Colony in all matters affecting the management of its homeowner's association. (*Id.* at 2). The Agreement sets

---

[1] Additionally, because the Court will direct entry of final judgment as to the sole remaining defendant in this action, former defendant Wiener, Weiss & Madison, APC's request for entry of judgment under Rule 54(b) is denied as moot.

forth numerous duties for Community to undertake on the Colony's behalf, including association affairs management, financial management services, management and collection of homeowner assessments, establishing a "resale and new resident communication hub," legal affairs management, tax management, insurance and investment management, board membership and relationship management, board meeting management, annual meeting management, contractor and vendor management, property and common area management, deed restriction and enforcement, architectural control committee management, and maintaining a customized website. (*Id.* at 12-16).

According to an affidavit from one of the "founding members" of Community, Community performs for the Colony "a multitude of services" unrelated to collecting debts. (Doc. 55-5 at 4). Per the affidavit, Community "devotes all of its efforts to managing and maintaining the property and less than five percent to the collection of past due assessments," and its "primary purpose is not the collection of debts." (*Id.*). Plaintiff's Statement of Contested Material Facts acknowledges that Community and the Colony concluded the Agreement but disagrees that Community was "actually performing" the duties described, as he has not "witnessed performance" of them. (Doc. 61-1 at 1).

Plaintiff is a member of the Colony who did not pay some monthly assessments as they came due. (Doc. 55-6 at 4). Community claims he failed to pay for "unknown reasons," while Plaintiff contends that it is "well established" that he stopped paying because work billed for was not actually being performed. (*Id.*; Doc. 61-1 at 1).

On or about March 6, 2017, Community sent Plaintiff a letter advising him of the debt he allegedly owed and that the Colony, "through its agent," might place a lien on his property due to his non-payment of assessments. (Doc. 55-3 at 1; Doc. 61-2 at 1). The next paragraph instructed

Plaintiff to address questions to "Community Management, LLC," and the paragraph after that instructed Plaintiff to "go to www.cmgt.org/thecolony" to make an online payment. (Doc. 55-3 at 1; Doc. 61-2 at 1). The letter was on the Colony's letterhead and signed "The Colony." (Doc. 55-3 at 1; Doc. 61-2 at 1). The letter closed with the following address block:

> PLEASE MAIL PAYMENT TO:
> The Colony
> C/O Community Management
> PO Box 60878
> Phoenix, AZ 85082-0878

(Doc. 55-3 at 1; Doc. 61-2 at 1). According to a declaration from Plaintiff, he initially thought the letter was from the Colony due to the letterhead and signature line. (Doc. 61-4 at 1-2). He did not realize until he re-read the letter again a few days later that it was "from" Community. (*Id.*).

In May and June 2017, Community sent substantially similar letters to Plaintiff. (Doc. 55-4 at 1; Doc. 61-2 at 2-3).

Based on the foregoing, Plaintiff makes various claims against Community pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Doc. 16 at 2, 9-14).

### III. THE MOTION FOR SUMMARY JUDGMENT

Community moves for summary judgment, arguing that it is not a "debt collector" and is therefore not subject to the FDCPA. (Doc. 55-1 at 6). It argues that it is a property management company and that its alleged involvement in debt collection, *i.e.*, collection of community assessments, is incidental to its fiduciary duties as the Colony's property management company. (*Id.* at 6-7 (citing 15 U.S.C. § 1692a(6)(F)). Community cites several cases stating that a property management company or other fiduciary is not a "debt collector" for FDCPA purposes. (*Id.* at 7-13).

Plaintiff opposes, arguing first that, when a property management company uses "deceptive

3

collection letters under a different name to collect late dues," it becomes a "debt collector" under the FDCPA. (Doc. 61 at 2-3). Plaintiff argues that he was misled in this case, not realizing that the March letter was actually from Community until he reviewed the letter more closely. (*Id.* at 4). He also contends that the debt amounts stated in the letters were "shockingly inaccurate." (*Id.*). Plaintiff also argues that some of his alleged debts were incurred in 2012, and Community does not have "a fiduciary duty to collect alleged debts that were already in default." (*Id.* at 5-7). Plaintiff further notes that discovery has not been conducted, and he maintains that he should have an opportunity to conduct discovery concerning the scope of Community's debt collection activities as well as the other services it allegedly provides to the Colony. (*Id.* at 7-10). Plaintiff argues that, if the "volume" of an entity's debt collection activities is "high enough," it may be a debt collector even if debt collection is not the entity's principal business. (Doc. 61 at 8).

In reply, Community asserts that "the issue before this Court is a simple one: Is [Community], a company in the business of managing homeowner's associations, a 'debt collector' as that term is defined under the [FDPCA]?" (Doc. 68 at 1). Community argues that the "false name" exception does not apply, as the letters alerted Plaintiff that the Colony was acting "through its agent," directed Plaintiff to address questions to "Community Management, LLC," and instructed Plaintiff to go to Community's website to make an online payment. (*Id.* at 2). Community also generally asserts that Plaintiff has offered "nothing to contradict [Community's] argument that it was collecting the debt owed by [Plaintiff] as part of its fiduciary obligation to its client." (*Id.* at 3-4). Finally, Community argues that this action was filed in March 2017, and Plaintiff has had "ample time" to depose Community or conduct discovery in the year that this case has been pending and the one-and-one-half months between the filing of the Motion and Reply. (*Id.* at 4-5).

4

The Court also asked the parties for supplemental briefing on whether Community was acting as a "creditor . . . in the process of collecting [its] own debts" as contemplated by the false name exception. (Doc. 71 at 1-2). Community's supplemental brief asserts that, although it was authorized to act on the Colony's behalf and was obligated to exercise good faith in collecting assessments, the assessments "are the property of" the Colony, not Community, and Community therefore does not "assert[]" that it acted as a creditor in the process of collecting its own debts. (Doc. 72 at 2). Plaintiff contends that case law and Community's own allegations establish that it is a creditor. (Doc. 73 at 2-3). Plaintiff relies principally on cases discussing whether various entities obtain creditor status by "standing in the shoes of" a creditor. (*Id.* at 3-4).

## IV. GENERAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing

5

> all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## V. DISCUSSION

The FDCPA distinguishes between creditors, "who generally are restrained by the desire to protect their good will when collecting past due accounts," and debt collectors, who may have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them." *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) (citations omitted).

Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). This term does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement." 15 U.S.C. § 1692a(6)(F). Notwithstanding § 1692a(6)(F), however, the term "debt collector" includes a creditor who "in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). The FDCPA defines a "creditor" as one "who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).

First, the Court considers whether Community initially falls within the FDPCA's definition of "debt collector"; that is, does Community either have the "principal purpose" of collecting debts or do so "regularly?" *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008)

("The statute contains two categories of debt collector, those who collect debts as their 'principal purpose,' and those who do so 'regularly.'"). On this issue, Community generally asserts that it is a property management company, its primary purpose is providing numerous management services to the Colony, and "only a small percentage" of its activities involve debt collection. (*See* Doc. 55-1 at 11-13). However, the Fifth Circuit has ruled that, "if the volume of a person's debt collection services is great enough, it is irrelevant that these services only amount to a small fraction of his total business activity[.]" *Garrett v. Derbes*, 110 F.3d 317, 318 (5th Cir. 1997). Community has provided no evidence establishing the overall volume of its collection activities. Therefore, the Court cannot conclude that Community is entitled to judgment as a matter of law solely on this basis.[2]

The next question is whether Community is excepted from the definition of "debt collector" by the "bona fide fiduciary obligation" provision of 15 U.S.C. § 1692a(6)(F). *See Betskoff v. Enterprise Rent A Car Co. of Baltimore, LLC*, 2012 WL 32575, at *5 (D. Md. Jan. 4, 2012) ("[T]he enumerated exceptions limit, rather than expand, the definition [of debt collector]."). Numerous cases state that the relationship between a community manager and property owner is a fiduciary relationship as contemplated by § 1692a(6)(F). *See Reynolds v. Gables Residential Servs., Inc.*, 428 F. Supp. 2d 1260, 1264 (M.D. Fla. 2006) ("It is clear from an examination of the Lease Agreement and the general relationship between a community manager and property owner that Gables had a fiduciary relationship and obligation to West Park, and/or its owners, to manage the apartment property and collect monthly rent."); *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d

---

[2] Given this ruling, the discovery Plaintiff requests concerning the scope of Community's debt collection activities is unnecessary. (Doc. 61 at 7-10); *see also Franco v. Maraldo*, 2000 WL 288378, at *4 (E.D. La. Mar. 16, 2000) (Vance, J.) (Rule 56 does not require that any discovery take place before summary judgment can be granted, and a court may also limit discovery if (1) the record reveals that the requested discovery is unlikely to produce the facts needed to defeat the motion for summary judgment; (2) the record shows that denial is necessary to protect defendant from harassment or needless fishing expeditions; or (3) if discovery is dilatorily sought.).

1298, 1302 (11th Cir. 2012) ("Liberty owed a fiduciary obligation to the Association. Everything that Liberty did pursuant to the management agreement—including the collection of unpaid assessments and the enforcement of the amendment to the Association's governing declarations—was as the agent of the Association[.]"); *Johnson v. Young*, 2007 WL 2177956, at *3 (S.D. Ohio July 27, 2007) ("Defendant falls within th[e] exception [provided for in § 1692a(6)(F)] as she was a property manager collecting rental payments incidental to her fiduciary duties to the property owners[.]"); *Berndt v. Fairfield Resorts, Inc.*, 339 F. Supp. 2d 1064, 1068 (W.D. Wis. 2004) ("Because the language in the Timeshare Management Agreement designates the manager of the Peppertree at Tamarack property as the Association's agent and because agency creates a fiduciary relationship between the agent and the Association and defendant managed the property, I find that defendant was acting incidentally to a bona fide fiduciary obligation when it collected the maintenance fees on behalf of the Association."); *Taylor v. Precision Prop. Mgmt.*, 2015 WL 1756981, at *10 (W.D. Mich. Apr. 17, 2015) (citing each of the above-cited cases in ruling that "a property manager who collects a debt as the agent of a condominium association is not a 'debt collector' under the FDCPA").

Plaintiff's primary argument against the application of the "bona fide fiduciary obligation" exception is that the exceptions in 15 U.S.C. § 1692a(6)(F) do not apply to "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). Community argues that it was not a creditor "collecting its own debts," (Doc. 72 at 2), and that "there was no false name which would confuse the least sophisticated consumer" given the numerous references to Community in the letters. (Doc. 68 at 2-3).

As one circuit has discussed, the "false name" exception has three distinct elements: "(1) the creditor is collecting its own debts; (2) the creditor 'uses' a name other than its own; and (3) the creditor's use of that name falsely indicates that a third person is 'collecting or attempting the collect' the debts that the creditor is collecting." *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013). The false name exception is meant to prevent a creditor from dunning its customers under a false name while maintaining the goodwill associated with its name. *Marcotte v. Bank of Am.*, 2015 WL 2184369, at *13 (S.D. Tex. May 11, 2015) (citing *Cangelosi v. New Orleans Hurricane Shutter & Window, LLC,* 2013 WL 395138, at *5 (E.D. La. Jan. 31, 2013)); *see also Chiang v. Verizon New England Inc.*, 595 F.3d 26, 41-42 (1st Cir. 2010) (false name exception was designed to combat "'flat-rating,' whereby creditors attempt to intimidate debtors by creating the false impression that a third party is participating in the debt collection process"); *South v. Midwestern Audit Servs., Inc.*, 2010 WL 5089862, at *14 (E.D. Mich. Dec. 8, 2010) (false name exception was enacted because, "where a creditor uses a 'false name' to collect its own debts it may abandon restraint—the creditor can hide behind a pseudonym and harass its delinquent customers without suffering . . . reputation-related consequences").

The false name exception does not apply. Even following supplemental briefing, Plaintiff has not made any showing that Community was a creditor *collecting its own debts*, rather than collecting amounts ultimately owed to the Colony as is clearly contemplated by the Agreement. (*See generally* Doc. 55-2). Plaintiff's argument to the contrary relies on Community "standing in the shoes of" the Colony by acting as its property management company, citing cases generally discussing the "bona fide fiduciary obligation" provision. (Doc. 73 at 2-4). The Court noted several of these cases *supra* and agrees with many of the principles discussed therein (including their holdings that, as a general matter, a property manager acting on behalf of a homeowner's

association is not a debt collector). However, they little inform the result on this specific issue, as they generally do not address the false name exception. The Court also notes that the "standing in the shoes of" language upon which Plaintiff relies is not found in 15 U.S.C. § 1692a, and Congress could have phrased the false name exception to apply to a creditor collecting "a debt" or "any debt" rather than only "its own debts." *See also Thomas v. American Service Finance Corporation*, 966 F. Supp. 2d 82, 95-97 (E.D.N.Y. 2013) (plaintiff alleged that defendant "was standing in the shoes of the creditor" and was therefore a creditor subject to the false name exception; court granted motion to dismiss, finding that entity with which debt had originated was "the creditor" and that the defendant was not collecting its own debts but instead "was essentially a billing agent" for creditor).

Moreover, to hold that the false name exception applies in this case would be to hold that Community improperly used the Colony's name in collecting debts ultimately owed to the Colony. In addition to requiring a strained reading of the phrase "collecting its own debts," applying the exception in this case would do nothing to address the evils at which the exception, and the FDCPA generally, was directed. *Marcotte*, 2015 WL 2184369, at *13; *Cangelosi,* 2013 WL 395138, at *5; *Chiang*, 595 F.3d at 41-42; *South*, 2010 WL 5089862, at *14; *see also Schlosser*, 323 F.3d at 536 (FDCPA is directed at conduct of debt collectors, who may have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them," rather than creditors, who are generally "restrained by the desire to protect their good will when collecting past due accounts"). For the foregoing reasons, the Court cannot conclude that the false name exception applies. Therefore, the "bona fide fiduciary obligation" exception applies to Community.[3]

---

[3] It is therefore unnecessary to rule on whether an unsophisticated or least sophisticated consumer would have been misled by the letter. In the interest of judicial economy, however, the Court notes that it generally agrees with Community. *See Button v. GTE Serv. Corp.*, 1996 WL 943904, at *2 (W.D. Mich. Oct. 15, 1996) ("Even the least sophisticated consumer, who is able to read, and is presumed to have read the notices received with some caution,

Plaintiff's remaining arguments are unavailing. First, Plaintiff's Opposition argues that the letters state amounts that are "shockingly inaccurate," (Doc. 61 at 4), but he has offered no competent evidence concerning the appropriate amounts of his debts. Moreover, Plaintiff has not addressed how a misstatement of the amount of his debt would render Community a "debt collector." Next, Plaintiff states that he did not "allege that [Community] did or didn't have a fiduciary duty to collect current/on-time payments," but Plaintiff's "argument is that they don't have a fiduciary duty to collect alleged debts that were already in default." (*Id.* at 5). Again, however, Plaintiff provides no record support for this assertion, and the Agreement expressly contemplates that, in its contractual role as property manager, Community will perform certain "collection activities" on the Colony's behalf in connection with past due assessments. (Doc. 55-2 at 13). The FDCPA also appears to contemplate that debts in default might be collected pursuant to a bona fide fiduciary obligation: 15 U.S.C. § 1692a(6)(F) contains exceptions for both activity incidental to a "bona fide fiduciary obligation" and activity concerning a debt that was "not in default at the time it was obtained." *See also Berndt*, 339 F.Supp.2d at 1066 ("I note that only one exemption under 15 U.S.C. § 1692a(6)(F) need apply to relieve defendant from the [FDCPA's] requirements.").

Community is not a debt collector. Plaintiff's FDCPA claims fail, and Community is entitled to summary judgment.

### VI. Conclusion

For the foregoing reasons, Community's Motion (Doc. 55) is GRANTED. Plaintiff's

---

would be able to determine from cursory review of the correspondence that National Credit Management Center is part of or related to defendant GTE Service Corporation, not a third-party debt collector or collection agency. A contrary conclusion could only be fairly characterized as idiosyncratic or the product of carelessness."); *see also Marcotte*, 2015 WL 2184369, at *13 (billing statement "could not give the least sophisticated consumer the false impression that a party unaffiliated with Barclays was collecting their Sunset Harbor debt[,]" as statement contained numerous references to Barclays).

claims against Community are DISMISSED WITH PREJUDICE.  Judgment will be entered consistent with this Ruling and Order.

Because final judgment will be entered in this action, former defendant Wiener, Weiss & Madison, APC's request for entry of judgment under Rule 54(b) (Doc. 51) is denied as moot.

Signed in Baton Rouge, Louisiana, on <u>May 7, 2018</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**